

McGraw Law Firm, P.A.
FINDING JUSTICE ONE CASE AT A TIME

Beau D. McGraw*
Attorney at Law
beau@mcgrawlawfirm.com

Melissa M. Schultz
Legal Assistant
melissa@mcgrawlawfirm.com

Zachary Longsdorf
Of Counsel

December 30, 2021

The Honorable Michael J. Davis
United States District Court
300 South Fourth Street
Suite 13E
Minneapolis, MN 55415

Re:   Taariq Vanegas v. Carleton College
      Court File Number: 0:19-cv-01878 (MJD/LIB)

Dear The Honorable Judge Davis:

On behalf of Plaintiff, Taariq Vanegas, and pursuant to Local Rule 7.1(j), we are requesting permission to file a motion for reconsideration of one portion of the Court's December 13, 2021, grant of Carleton College's motion for summary judgment.

Motions for reconsideration serve the purpose of "correct[ing] manifest errors of law or fact or ... present[ing] newly discovered evidence." Hagerman v. Yukon Energy Corp., 839 F.2d 407, 414 (8th Cir. 1988) (quoting Rothwell Cotton Co. v. Rosenthal & Co., 827 246, 251 (7th Cir. 1987)). This is such a case.

On page 34-35 of the Opinion, the Court wrote as follows:

"6. Decision to Expel Plaintiff Done in Violation of Carleton's Policies and Procedures Carleton's Executive Authority Policy provides that no student will be expelled without the specific consent of the President of the College. The "Executive Authority" section provides:  The President of the College (or his/her designee) has the obligation to attempt to assure the safety of individuals, the protection of property, the continuity of the educational process, or the preservation of the legal status of the College. In executing these obligations, the President (or his/her designee) is specifically empowered to determine the status of any student at any time. The President (or his/her designee) may remove individuals from campus or prohibit individuals from being on campus and expel, suspend, or otherwise take action with respect to such individuals. If a student is expelled, suspended, withdrawn or placed on leave of absence as a result of the exercise of executive authority, the terms upon which resumption of normal student status will be permitted, if any, will be stated at the time of the decision. In any case, no student will be expelled without the specific consent of the President of the College. (Somermeyer Decl. Ex. W.) Plaintiff asserts there is no evidence in the record that Livingston obtained the President's consent to expel Plaintiff. However, Livingston testified

at her deposition that she obtained the President's consent before expelling Plaintiff. (Id. Ex. D (Livingston Dep. at 95-97).) Plaintiff has provided no evidence to refute this testimony. Accordingly, this claim fails.

In so holding, the Court relied on Carleton's brief (and its counsel's Declaration), not on an independent reading of pages 95-97 of Dean Livingston's deposition. But Carleton's description of Dean Livingston's testimony is flatly untrue. Indeed, it is the opposite of her actual testimony on those very same pages.

In pages 95-97, Dean Livingston <u>did not</u> testify that "she obtained the President's consent . . .." To the contrary, she was emphatic that she did not need his consent. She said she felt she needed only to <u>inform him</u> of her decision, nothing more: "I needed to make him aware of the—of the decision that I was—that I was going to make." Tr. 98. "It was an expulsion of a student, so I shared that information with him." Tr. 98. (For context, Dean Livingston never had occasion to read the "Executive Authority" page of the Manual. That is because, in her six years as Dean of Students (reporting solely to President Poskanzer), this was the only "student expelled over your tenure." (Tr. 96.))

So, simply on the grounds that the Court was led into error by Carleton's brief (and counsel's Declaration), the Court should reverse its decision on that point, and hold that the "expulsion" (as opposed to the Hearing Panel's determinations of "violation" and "suspension") was improper and must be vacated.

In addition, the Court erred in considering any deposition testimony concerning what President Poskanzer allegedly said to Dean Livingston. (Even the one and only word Dean Livingston said he uttered: "Okay." Tr. 97, 98.) That is because Dean Livingston's testimony of what Poskanzer "said" to her is inadmissible "hearsay." Hearsay is defined uniformly as the extra-judicial oral statement of a person not then himself testifying in person, which is "offer[ed]h in evidence to prove the truth of the matter asserted in the statement." Rule 801(c)(2).

And here there was no exception to the hearsay rule available. President Poskanzer was alive, well, and perfectly able to testify as to anything he may have said to Dean Livingston. But he chose not to. Indeed, after we served upon Carleton a timely notice for his deposition, Carleton—in writing—refused to produce him for deposition (all at a time when he remained President of the College).

Nor can it be said that the improper admission of that particular hearsay testimony was a harmless error. To the contrary, that hearsay was central to the Court's decision. (Separate and distinct from the fact that Dean Livingston's actual testimony was to the contrary of what Carleton represented her testimony to be.)

Very truly yours,

**MCGRAW LAW FIRM, P.A.**

/s/Beau D. McGraw

Beau D. McGraw

Cc:     All counsel of record – via ECF